WILLIAM FRIEDMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Friedman v. Comm'r
Docket Nos. 3858-73, 3859-73, 3860-73, 3861-73, 3862-73, 3863-73, 3864-73, 3865-73, 3866-73, 3867-73, 3868-73, 3869-73, 3870-73, 3871-73, 3872-73, 3873-73, 3874-73, 3875-73, 3876-73, 3467-74, 5856-74. United States Tax Court
T.C. Memo 1977-201; 1977 Tax Ct. Memo LEXIS 243; 36 T.C.M. (CCH) 841; T.C.M. (RIA) 770201; June 28, 1977, Filed *243 1. Petitioners undertook the development of a condominium complex. When the buildings were nearing completion, the common elements were submitted to condominium ownership. In accordance with a prearranged plan, the condominium association, which was likewise under the control of petitioners, entered into a 99-year lease for the recreational facilities which comprised a part of the project. When the individual units were sold, the buyer assumed a pro rata share of the obligations under this lease. Held, the present value of the rentals under the 99-year recreational lease, to the extent in excess of a fair rental for the recreational facilities, is not taxable to the petitioners as part of the consideration received for the sale of the individual condominium units. Since such excess did not constitute income to the petitioners in the first instance, it is not allocable to the developer pursuant to section 482. 2. The petitioners designated as "Group A Participants" entered into a joint venture for the development of a condominium complex. In consideration for their agreement to provide the funds required for the purchase of the land, petitioners were given the option to purchase *244 the recreational and commercial facilities in the building for a specified price. Held, the value of the investment unit representing "original issue discount" as defined in section 1232 must be allocated to the cost or basis of the option. Under section 1232, this discount would result in taxable income when the loan was repaid. Held further, no additional taxable income would be realized when the option was exercised. Melvin N. Greenberg,Eileen Trautman,Alan R. Chase, for the petitioners. Curtis Liles, III, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in the income tax of petitioners in these consolidated cases as follows: Docket No.
Deficiency
1969
1970
3858-73
$ 3,572.52 $
3859-73
34,474.00
3860-73
4,315.00
3861-73
1,216.00
3862-73
1,211.00
3863-73
2,619 .00
3864-73
13,202.06
3865-73
183,095.00
3866-73
3,314.00
3867-73
41,134.00
3868-73
186,823.00
3869-73
4,655.00
3870-73
8,539.00 * *245 3871-73
9,209.00
5,767.00
3872-73
37,956.00
15,205.00
3873-73
1,003.00
3874-73
60,881.00
3875-73
27,260.00
3876-73
2,494.00
3467-74
4,901.94
5856-74
966,812.28
Total
$440,149.58
$1,179,509.22
In addition, respondent amended his answer in the cases of Theodore Sondov and Dina Sondov, docket No. 3467-74; and Herman Sondov and Rhea Sondov, docket No. 3871-73 to include deficiencies in the taxable year 1970 in the amounts of $25,888.19 and $22,561.25, respectively. Subsequently, respondent amended his answer to include additional deficiencies for the taxable year 1969, as follows: Increase in Docket No.
Deficiency
3858-73
$ 11,898.79
3859-73
78,127.70
3860-73
12,820.90
3863-73
4,927.78
3864-73
33,527.76
3865-73
534,1 64.70
3866-73
11,301.33
3867-73
92,235.30
3869-73
10,422.80
3870-73
11,212.31
3871-73
26,649.96
3873-73
2,665.95
3874-73
164,086.70
3876-73
6,200.70
Total
$ 1,000,242.68 As a result of the agreement by the parties, the remaining issues to be considered at this time are as follows: A. Buckley Towers
1. Whether the present value of the excess rents for the recreational facilities, which a purchaser of a condominium *246 unit assumed as a condition of sale, is includable in the income of Buckley Development Co., Ltd., as a part of the consideration received for the sale of the condominium unit under section 61. [2]
2. In the alternative, whether the present value of the excess rents for the recreational facilities, which a purchaser of a condominium unit was required to assume as a condition of sale, should be allocated to Buckley Development Co., Ltd., as the developer of the property, under section 482. 3. In the event that respondent's determination is sustained, whether any additional income attributable to the sale of the residential condominium units may be reported on the installment basis pursuant to section 453. B. Burleigh House
Whether the petitioners realized additional income in 1969 through a bargain purchase of the recreation and shop facilities of the Burleigh House condominium development. Depending upon the decision of the Court with respect to these issues, a further hearing may be necessary to determine the nature and amount of such income and the extent to which such income *247 is taxable to petitioners. FINDINGS OF FACT For the most part, the facts have been stipulated by the parties. The stipulation of facts, together with the exhibits attached thereto, are incorporated by this reference. Petitioner William Friedman (docket No. 3858-73) resided in Miami Beach, Florida, on May 18, 1973, and July 12, 1974, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioner filed an income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners James F. Gallagher and Helene Gallagher (docket No. 3859-73) resided in Miami, Florida, and Miami Shores, Florida, at the time the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of Internal Revenue at Chamblee, Georgia. Petitioners Elliott Harris and Arlene F. Harris (docket No. 3860-73) resided at Miami Beach, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, *248 the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioner Keith Charles Pasternak, a Minor by Alan S. Pasternak, Custodian and Guardian, (docket No. 3861-73) resided at Miami, Florida, at the time the petition was filed. For the taxable year 1969, the petitioner filed an income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioner Susan Jeanne Pasternak, a Minor by Alan S. Pasternak, Custodian and Guardian, (docket No. 3862-73) resided at Miami, Florida, at the time the petition was filed. For the taxable year 1969, the petitioner filed an income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Donald L. Pearce and Bernice B. Pearce (docket No. 3863-73) resided at Miami, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners *249 filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Theodore Sondov and Dina Sondov (docket No. 3864-73 and 3467-74) resided in Fort Lauderdale, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed a joint income tax return with either the District Director of Internal Revenue at Brooklyn, New York, or the North Atlantic Service Center of the Internal Revenue at Holtsville, New York. Petitioners Herbert Buchwald and Arlene Buchwald (docket No. 3865-73) resided in Miami Beach, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia.
Petitioners Adalburt Buchwald and Helen Buchwald (docket No. 3866-73) resided in North Miami Beach, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax *250 returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioner Stuart L. Haas (docket No. 3867-73) resided in Miami Shores, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioner filed income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioner Buchwald Enterprises, Inc. (docket No. 3868-73) is a Florida corporation with its principal place of business in Miami Beach, Florida, at the time the petition was filed. For the taxable year 1970, the petitioner filed an income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Joshua Sirkin and Carolyn Sirkin (docket No. 3869-73) resided in Miami, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue *251 at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Norman Jacobson and Mildred Jacobson (docket No. 3870-73) resided in Saint Petersburg, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Herman Sondov and Rhea Sondov (docket No. 3871-73) resided in Fort Lauderdale, Florida, at the time the petition was filed. For the taxable year 1969, the petitioners filed a joint income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioner Cantor Children's Trust, Beatrice Cantor and Herbert Buchwald, Trustees, (docket No. 3872-73) is a trust established and administered in the State of Florida and had an address in Miami Beach, Florida, at the time the petition was filed. For the taxable year 1969, the petitioner filed an income tax return with either the *252 District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Edward S. Millis and Minerva C. Millis (docket No. 3873-73) resided in Miami, Florida, at the time the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Joseph Nawalaniec and Irene Nawalaniec (docket No. 3874-73), hereinafter sometimes referred to as Joseph and Irene Walan, resided in Miami Beach, Florida, at the times the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Philip R. Stark and Elaine Stark (docket No. 3875-73) resided in North Miami, Florida, at the time the petition was filed. For the taxable year 1969, the petitioners filed a joint income tax return with either the *253 District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Sam Pasternak and Frieda Pasternak (docket No. 3876-73) resided in Miami Beach, Florida, at the time the petitions were filed. For the taxable years 1969 and 1970, the petitioners filed joint income tax returns with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia.
Petitioners Alan S. Pasternak and Linda Pasternak (docket No. 5856-74) resided in Miami, Florida, at the time the petition was filed. For the taxable year 1970, the petitioners filed a joint income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast Service Center of the Internal Revenue at Chamblee, Georgia. Petitioners Leonard C. Cantor and Beatrice Cantor (docket No. 5856-74) resided in Miami, Florida, at the time the petition was filed. For the taxable year 1970, the petitioners filed a joint income tax return with either the District Director of Internal Revenue at Jacksonville, Florida, or the Southeast *254 Service Center of the Internal Revenue at Chamblee, Georgia. $1Buckley Towers On June 29, 1967, Herbert Buchwald, in a capacity as trustee, agreed to purchase the issued and outstanding stock of the Troy Land Co., a Florida corporation. Buchwald sought to acquire the unimproved real property owned by Troy Land Co. for the development of a residential condominium complex. This complex was to consist of two condominium buildings, Buckley Towers East and Buckley Towers West, and certain recreational facilities, constructed on the same parcel of land but not part of the common property of the condominium administration. Thereafter, Herbert Buchwald took possession of the land owned by Troy Land Co.; and a building permit was obtained to construct the recreational and commercial facilities of the Buckley Towers complex. On September 1, 1967, Herbert Buchwald, as trustee, consummated the acquisition of the stock of the Troy Land Co., and on September 19, 1967, received the land in issue as part of the liquidation of the Troy Land Co. In November 1967, the Buckley Towers Condominium sales office opened; and the first sales contracts were signed for the purchase of residential condominium *255 units. On December 17, 1968, Herbert Buchwald, as trustee, submitted the residential condominium units and the common elements of Buckley Towers East and Buckley Towers West to condominium ownership through a Declaration of Condominium filed in the public records of Dade County, Florida. The recreational and commercial facilities and the land allocable thereto were, at that time, reserved by Herbert Buchwald, as trustee, and were not subjected to ownership by the condominium association. On that same day, Herbert Buchwald, as trustee, entered into a Community Facility Lease with the Buckley Towers Condominium Association (Buckley Towers Condominium, Inc.), whereby the association leased the recreational facilities in the condominium complex and the land allocable thereto which had not been submitted to condominium ownership. The condominium association was comprised of the owners of all the residential, commercial and recreational units in the complex consisting of Buckley Towers East and West. At the time the lease was signed, the owner of all such units was Herbert Buchwald, as trustee. The Community Facility Lease granted to the lessee a nonexclusive right to use the recreational *256 facilities for a term of 99 years in exchange for a stated rental. The lessor specifically reserved the right to make additional leases with other condominium developments. The total cost of the recreational units, shop units and recreational facilities constructed at Buckley Towers East and West was $318,899.46. This cost includes the cost of construction of the recreational units and shop units and a proportionate share of the real property on which Buckley Towers is situated, as well as the cost of the recreational facilities and real property not submitted to condominium ownership. The total annual base rent under the Community Facility Lease was $155,904.00, being the equivalent of 48.8 percent of the cost of such facilities. The rent was allocated to the individual condominium units in the form of an established monthly assessment for each type of unit. These assessments ranged from $19.50 to $28.00 per month, with the average assessment about $21.50 per month. The lease also provided that the base rental would be adjusted to reflect increases in the cost of living as indicated by increases in the Consumers Price Index. Once increased, the amount of the rent would not be *257 reduced. Payment of the rent under the Community Facility Lease was secured by a lien on all property subject to the Declaration of Condominium, including the real property, the buildings, the fixtures and equipment. The recreational facilities leased by the condominium association were part of the common elements of the condominium development. As such, the maintenance and operation of the leased facilities was the responsibility of the condominium owners association and was a common expense. The common expenses included the expense of administration, maintenance, operation, repair and replacement of the leased premises. The owner of the recreational facilities was not liable for any of these common expenses. The condominium units in Buckley Towers were intended by the developers to be sold in competition with the rental apartments. When the Buckley Towers project was initiated, condominiums were a relatively new concept in the Florida market. In order to compete in the rental market, it was contemplated that the Buckley Towers Condominiums would be offered for a minimal down payment and a monthly cost (including rental of the recreational facilities) which would be equivalent *258 to the rental of a comparable unit. The reservation of the recreational facilities enabled the developers to offer the condominium units for a lower price, relying on future rents to provide an additional profit as an incentive for the developers. The closing of the residential condominium units began in January 1969. The sales price of a residential unit ranged from $17,500 to $23,000. Each purchaser of a residential unit at Buckley Towers consented to and approved the provisions of the lease and assumed the obligations of the lease as part of the proportionate share of the common expenses attributed to his condominium unit. For almost all of the residential units in the Buckley Towers complex, Herbert Buchwald, trustee and individually, joined by his wife, had obtained a first mortgage as permanent financing on a particular unit from the Hollywood Federal Savings and Loan Association. The proceeds from each of these mortgages were utilized to satisfy a proportionate amount of the construction loan, thereby obtaining the release of a given residential condominium unit from the construction mortgage. Upon the sale of the unit, the purchaser would assume the obligation of Herbert *259 Buchwald, trustee and individually, joined by his wife, on such mortgage. On June 2, 1969, Herbert Buchwald, trustee, entered into a Declaration of Trust for the benefit of certain beneficiaries. The stated purpose of this Declaration was to commit to writing the terms and conditions of two oral trust agreements and to state all past and future action taken and to be taken by Herbert Buchwald, as the trustee for the two trusts. Under the terms of this Declaration, Herbert Buchwald, trustee, held in Buckley Trust "A" the residential condominium units and the land submitted to condominium ownership for the benfit of the Buckley Development Co., Ltd., the partnership which developed the property. Buckley Trust "B" held the recreational facilities and the property not submitted to condominium ownership for the benefit of certain named individuals. The Buckley Trust "B" received rents under the lease and the commercial unit leases during the taxable years involved and reported such rents on its 1969 and 1970 income tax returns. The beneficiaries of this trust, who are petitioners in this group of cases, reported distributions of rental income from the trust on their own income tax *260 returns. With the exception of Martin Buchwald and Ann Frater, the beneficiaries of Buckley Trust "B" held essentially the identical interests in the Buckley Development Co., Ltd., either directly or through participation in one of the three small business corporations, which owned partnership interests in the Buckley Development Co., Ltd. Such interests were, as follows: Buckley
Buckley Trust
Development Co., Beneficial Owner
"B"
Ltd., Interest
Herbert and Arlene Buchwald
36.72%
36.72%
Joseph and Irene Walan
12.50%
12.50%
William Friedman
1.25%
1.25%
Norman Jacobson
1.25%
1.25%
Minerva Millis
.50%
.50%
Joshua A. Sirkin
1.25%
1.25%
Donald and Bernice Pearce
1.25%
1.25%
Adalburt and Helen Buchwald
1.47%
1.47%
Sam and Frieda Pasternak
1.47%
1.47%
Elliott and Arlene Harris
1.47%
1.47%
Alan and Linda Pasternak * *261 1.47%
-0-
Keith Pasternak
-0-
.735%
Susan Pasternak
-0-
.735%
Stuart Haas
7.35%
7.35%
James Gallagher
7.35%
7.35%
Philip Stark
7.35%
7.35%
Herman and Rhea Sondov
3 $125%
3.125%
Theodore and Dina Sondov
3.125%
3.125%
Leonard and Beatrice Cantor *
7.35%
-0-
Cantor Children's Trust
-0-
7.35%
The earnings of the Buckley Development Co., Ltd., were taxed directly to petitioners. Both of the Sondov's and the Cantor Children's Trust owned partnership interests in the Buckley Development Co., Ltd. The other petitioners were shareholders of one or more of three qualified electing small business corporations, Buckley Construction Co., Inc., Buchwald Investment Corp., and The Big X, Inc., which also owned partnership interests in the Buckley Development Co., Ltd. For the fiscal years ending September 30, 1969, and September 30, 1970, Buckley Development Co., Ltd., reported gross sales and cost of goods sold, as follows: Fiscal 1969
Fiscal 1970
Gross Sales
$7,418,879.76
$3,826,074.00
Cost of Goods
6,752,159.00
3,429,562.00
Gross Profit
$ 666,720.76
$ 396,512.00
As a result of these sales, Buckley Development Co., Ltd., had a gross profit on sales of residential condominium units in the fiscal year ending September 30, 1969, of approximately 8.9 percent and in the fiscal year ending September 30, 1970, of approximately 10.3 percent.For these same years Buckley Development Co., Ltd., had ordinary income, after all deductions, of $443,219.09 and $328,699.00, *262 respectively. Respondent determined, in the respective statutory notices issued in these cases, that petitioners realized additional income in the amount of $652,851.52 in 1969 and 1970 through Buckley Development Co., Ltd., on account of the sale of residential condominium units, measured by the present value of that portion of the rent under the lease of the recreational facilities determined by the respondent to be excessive, i.e., in excess of a fair and reasonable rental for such facilities. For purposes of this decision, petitioners concede that such rents were "excessive." Burleigh House
In August and September of 1968, Herbert Buchwald, acting in a capacity as trustee, entered into two purchase agreements to acquire a certain tract of land for a condominium development. On October 15, 1968, Herbert Buchwald, as trustee for a Florida corporation to be formed, Burleigh House, Inc., entered into a Joint Venture Agreement with certain individuals designated the Group A Participants. The individuals of this group are petitioners herein; and their respective interests are, as follows: Group A Participants
Interest
Joseph and Irene Walan
14.34%
William Friedman
1.25%
Norman Jacobson
1.25%
Minerva Millis
.50%
Donald and Bernice Pearce
1.25%
Joshua A. Sirkin
1.25%
Herbert and Arlene Buchwald
42.23%
Adalburt and Helen Buchwald
1.47%
Sam and Frieda Pasternak
1.47%
Elliott and Arlene Harris
1.47%
James F. Gallagher
7.35%
Stuart L. Haas
7.35%
Herman and Rhea Sondov
3.125%
Theodore and Dina Sondov
3.125%
Alan and Linda Pasternak
1.47%
Leonard C. and Beatrice Cantor
7.3k%
Under *263 the Joint Venture Agreement, Burleigh House, Inc., was formed to develop a condominium complex to be known as Burleigh House on the land for which Herbert Buchwald, trustee, had entered into purchase agreements. Herbert Buchwald, trustee, assigned his interest as trustee in those contracts to Burleigh House, Inc. The Group A Participants thereupon agreed to advance Burleigh House the sum of $338,000 as a loan to close the purchase of the land. In consideration of this loan, the Joint Venture Agreement provided that the Group A Participants through Herbert Buchwald, trustee, were granted an option to purchase all or any part of the recreational and commercial facilities of the Burleigh House condominium development. This trust arrangement became known as the Burleigh Trust. The purchase price of the facilities under option was to be the sum of (1) the cost of the land not subject to condominium ownership and the cost of the improvements plus 10 percent of the cost of the improvements, and (2) the prorated cost of the real property on which recreational and commercial units were constructed and the cost of the recreational and commercial units plus 10 percent of the cost of the recreational *264 and commercial units. Apparently, any such facilities, both those on separate land and those which were part of the residential condominium development, were subject to this option. The Joint Venture Agreement further provided that the recreational facilities to be purchased by the Group A Participants, upon exercise of the option, would be subject to a long-term net lease with the condominium owners association as lessee once the development was submitted to condominium ownership. If the improvements on the land acquired by Herbert Buchwald were not submitted to condominium ownership, the Joint Venture Agreement provided that the property would be conveyed by the holder of the fee-simple title to such land to the Group A Participants for an amount constituting the cost of the construction of the improvements, plus 10 percent, plus the amount of any amortization paid by the developer on account of any mortgages. The option to purchase the Burleigh House recreational and commercial facilities was acquired by Herbert Buchwald, trustee, prior to the consummation of the purchase of the land and prior to obtaining building permits to construct the condominium complex. Early in December *265 1968, Burleigh House, Inc., acquired possession and title to the tract of land for the condominium development. On December 15, 1969, Burleigh House, Inc., submitted all of the land that it had acquired through Herbert Buchwald, trustee, from the two purchase agreements to condominium ownership through a Declaration of Condominium filed in the public records of Dade County, Florida. On December 23, 1969, Herbert Buchwald, trustee, closed the purchase of the recreational and commercial facilities in Burleigh House for the Group A Participants through the exercise of the option. The option price paid by Herbert Buchwald, trustee, on behalf of the Group A Participants, for the recreational and commercial facilities was $420,000. Herbert Buchwald, trustee, executed a promissory note for $420,000 which was secured by a mortgage deed. After acquiring these facilities, Herbert Buchwald, trustee, executed on December 23, 1969, on behalf of the Group A Participants, a Community Facility Lease with the Burleigh House Condominium Association, Burleigh House Condominium, Inc., for the use of the recreational facilities. The condominium association was a nonprofit corporation composed of the *266 owners of all of the condominium units in the Burleigh House complex. At this time, the owner of all the condominium units was Burleigh House, Inc., which was owned entirely by Herbert Buchwald and Joseph Walan. The total annual base rent under the Community Facility Lease was $181,440.00. This amount was computed on the basis of a monthly assessment of $42.00 for each of the residential units in the building. The lease also provided that the base rental would be adjusted to reflect increases and decreases in the cost of living as reflected in the Consumers Price Index. But the rental would never be less than the base rent. On December 24, 1969, Herbert Buchwald, as trustee of the Burleigh Trust, executed a Declaration of Trust stating all actions taken by him as trustee on behalf of Burleigh House, Inc., and the Group A Participants and stating all future actions to be taken by him as trustee on behalf of the Group A Participants. In the taxable year 1969, Burleigh House, Inc., had no accumulated or current earnings and profits. On March 31, 1970, the stockholders of Buckley Construction Co., Inc., The Big X, Inc., Buchwald Investment Corp., Burleigh House, Inc., and Tamiami *267 Hills Country Club and the partners of Buckley Development Co., Ltd., transferred all their corporate stock and partnership interests to Buchwald Enterprises, Inc., in exchange for its common and preferred stock. For the calendar year 1970, Buchwald Enterprises had earnings and profits of $280,160.00 as reflected on its Federal incvome tax return. Respondent initially determined that the Group A Participants herein realized income in 1970 as a result of the purchase of the recreational and commercial facilities in the Burleigh House condominium development from Buchwald Enterprises, Inc. Respondent now concedes such determination was incorrect. But respondent has additionally determined through amendments to his answer that such petitioners realized income in 1969 on account of said purchase by Herbert Buchwald, trustee, in the year 1969.
OPINION Buckley Towers
With respect to the Buckley Towers recreational lease, there is presented substantially the same question which the Court decided in Lakeside Garden Developers, Inc. v. Commissioner,T.C. Memo 1976-290. Herbert Buchwald, acting on behalf of the petitioners, acquired certain property for development as a condominium consisting *268 of two buildings, Buckley Towers East and Buckley Towers West. The plan for the development envisioned the ultimate sale as condominiums of residential apartments in these buildings. The developer retained ownership of certain areas in the development containing recreational and commercial facilities. These facilities were located partially on a portion of the land which was not submitted to condominium ownership and partially within the condominium buildings. The income or gain to be derived from the development would thus consist, in part, of the proceeds from the sale of the condominiums and, in part, of the rents to be derived from the lease of the recreational facilities. On December 17, 1968, when Buckley Towers East and Buckley Towers West were in the process of construction, the properties were submitted to condominium ownership with the reservation of the recreational facilities. On the same day, Herbert Buchwald, representing the owners of the recreational facilities, entered into a 99-year lease for such facilities with the condominium association, the then owner of the condominiums in these buildings, granting the association a nonexclusive right to the use of the recreational *269 facilities. At that time, Herbert Buchwald, as trustee for the developer, also acted on behalf of the condominium association. When the residential condominium units in Buckley Towers were sold to individual owners, each purchaser was required to assume, as part of the common charges to the residential unit owner, the obligation to pay an allocable share of the amount due under the 99-year lease on account of the recreational facilities. The obligation constituted a lien enforceable against the interest of the owner of the residential unit. Respondent has determined that Buckley Development Co., Ltd., realized additional income from the sale of residential condominium units in the Buckley Towers complex measured by the capitalized value of the portion of the recreational lease which is deemed "excessive." [3] By "excessive" respondent means the amount by which the rentals for the receational facilities exceeded a "fair rental" for such facilities, which respondent determined to be 10 percent of the cost of the facilities. Respondent would treat the present value of the obligation of the ultimate purchasers to pay "excessive rentals" over the 99 years as income to the Buckley Development *270 Co., Ltd., in the first instance, which as partnership income would pass through to petitioners either directly or through their ownership of shares in qualified electing small business corporations which held partnership interests. Petitioners contend that the rental which the individual condominium purchasers assumed was paid pursuant to a 99-year lease of the recreational facilities and, as such, cannot be attributed to Buckley Development Co., Ltd., as a part of the purchase price of the condominium. While it must be assumed for the *271 purposes of this decision that the rentals were excessive in relation to the cost of the recreational facilities, petitioners contend that the amounts paid nonetheless constituted rent, chargeable solely to the owners of the recreational facilities, citing Welsh Homes, Inc. v. Commissioner,32 T.C. 239 (1959), affd. 279 F.2d 391 (4th Cir. 1960); Estate of Simmers v. Commissioner,23 T.C. 869 (1955), affd. 231 F.2d 909 (4th Cir. 1956); Lipsitz v. Commissioner,21 T.C. 917 (1954), affd. 220 F.2d 871 (4th Cir. 1955).
It is clear from the record in this case that the agreement between Herbert Buchwald, as trustee for the petitioners, and Herbert Buchwald, as trustee for Buckley Development Co., Ltd., the then owner of all of the condominium units in Buckley Towers, for the lease of the recreational facilities, did not represent an arm's-length transaction arrived at by negotiation between unrelated parties. From the outset, it was conceived as a means to enhance the overall profitability of the development. Respondent is fully justified in looking to the substance of the transaction for purposes of determining the resulting tax liabilities of the parties. Cf. e.g., Smith v. Commissioner,537 F.2d 972 (8th Cir. 1976); *272 Waterman Steamship Corporation v. Commissioner,430 F.2d 1185 (5th Cir. 1970), cert. denied 401 U.S. 939; United States v. General Geophysical Company,296 F.2d 86 (5th Cir. 1961); see also National Carbide Corp. v. Commissioner,336 U.S. 422 (1949). The weakness of respondent's case lies on the remedy chosen. [4]
Respondent correctly points out that the purchasers of the individual condominium units were not in a position to negotiate with respect to the rentals to be paid for the recreational facilities. Hence, respondent would treat the present value of the obligation, assumed by the ultimate purchaser of these condominium units to pay so much of the rents for the recreational facilities, which may be considered "excessive," as part of the consideration received by Buckley Development Co., Ltd., from the sales of such units. Respondent argues that this characterization of the facts represents the substance of the transaction for tax purposes. Respondent cannot deny to petitioners the right to divorce ownership and control of the recreational facilities from the sale of the residential units. Whether all *273 common facilities become a part of the cost of the development, or are to be treated separately, depends upon the contractual rights and obligations of the parties. The fact that the developer plans to maintain such facilities separate and apart from the sale of the residential units, and to realize a profit from the operation or subsequent sale of the common facilities, does not require that the consideration received for the use of such facilities be included as a part of the purchase price of the residential units. It is not uncommon for developers to incur costs for other land and improvements such as water and sewage systems, roadways, recreation areas and the like for the benefit of the development as a whole. Where the developer either dedicates such facilities for general use or transfers such facilities to the purchasers of the individual properties within the development for the purpose of inducing customers to buy such properties, such expenditures become a part of the cost of the properties to be sold. On the other hand, where the developer does not dedicate such facilities to the exclusive use of the property owners, but instead elects to make the facilities a commercial *274 venture in and of itself, the cost of the facilities does not become a part of the basis of each property sold. Willow Terrace Development Co. v. Commissioner,345 F.2d 933 (5th Cir. 1965); Gersten v. Commissioner,267 F.2d 195 (9th Cir. 1959); Noell v. Commissioner,66 T.C. 718 (1976); Derby Heights, Inc. v. Commissioner,48 T.C. 900 (1967); Colony, Inc. v. Commissioner,26 T.C. 30 (1956), affd. on other issues, 244 F.2d 75 (6th Cir. 1957); Country Club Estates, Inc. v. Commissioner,22 T.C. 1283 (1954). While the recreational facilities in this case may have been constructed, in part, for the purposes of inducing customers to purchase condominium units, the lessor of these facilities retained complete control over their future use and development. Under the long-term "lease" between the condominium association and the owners of the recreational facilities, the owners merely gave the association a nonexclusive right of possession. The owners specifically reserved the right to make and enter similar lease arrangements. [5] *275 By virtue of the complete control which the owner of these recreational properties reserved over their future use and development, the rights retained by the lessor would have precluded inclusion of the cost of such facilities in the basis of the condominium units. Since the cost of the recreational facilities could not be considered a part of the cost of the project, the cost of these facilities would not have been recoverable, for tax purposes, from the sale of the condominium units. Cf. Cooper v. Commissioner,31 T.C. 1155 (1959). To include the present value of the excessive rentals from these facilities as a part of the proceeds of the sale of the condominium units would thus be contrary to the rationale of Willow Terrace Development Co. v. Commissioner, supra;Gersten v. Commissioner,supra;Noell v. Commissioner, supra;Derby Heights, Inc. v. Commission5r,supra;Colony, Inc. v. Commissioner,supra; *276 Country Club Estates, Inc. v. Commissioner,supra and similar cases. According to the testimony of Herbert Buchwald, who was the principal partner in these transactions, the condominium concept in 1967 was relatively new in the Florida market when this project was organized. The condominium apartments were offered in competition with rental units. In order for Buckley Towers to be competitive in this market, the down payment had to be kept as low as possible and the monthly charges had to be kept within a range which was still competitive with the monthly rental of comparable rental units. By divorcing ownership of the recreational facilities from the condominium association, petitioners were able to reduce both the stated price of the condominium and the financing required to purchase the unit. This meant that the purchase price of a condominium unit, which ranged from $17,000 to $23,000, would be approximately $3,000 less than would have been the case if ownership of the recreational facilities had been vested in the condominium association. Such an increase would have adversely affected the marketability of the units. There is nothing in the record to suggest that the price *277 range of $17,000 to $23,000 for these apartments was less than compensatory or less than what other developers were getting for similar condominium units.In fact, Buckley Development Co., Ltd., had a gross profit on such sales of approximately 8.9 percent in the fiscal year ending September 30, 1969, and of approximately 10.3 percent in the fiscal year ending September 30, 1970. The individuals who purchased these units were presumably willing purchasers who were aware that they were paying $19.50 to $28.00 a month for the use of what appears to be extensive recreational facilities. It may well be from the standpoint of the individual purchaser, these monthly charges were reasonable. Certainly if the purchaser were not willing to pay such charges, they could either have opted for a rental unit or have sought other condominiums which were not burdened by such recreational leases. It must be recognized that these particular units were not the only apartments in the Miami area. The position of the respondent in this case is bottomed on the proposition that the obligation to pay "excessive rentals" had a present value and that such value should be allocated to Buckley Development Co., *278 Ltd., as a part of the proceeds of the sale of the individual units. The mere fact that the obligation has a present "value" does not warrant the adoption of this theory. There is little question that the obligation of any lessee to pay rent under a 99-year lease has a present value. But to attempt to tax the value of such a leasehold at the time that the lease is entered into, or when such obligation is assumed by a third party, would run directly counter to what has been the accepted practice, and presumably the law, since the first revenue act. Welsh Homes, Inc. v. Commissioner,supra;Estate of Simmers v. Commissioner,supra;Lipsitz v. Commissioner,supra.
In the alternative, the respondent contends that the "value" of the obligation to pay the "excessive rentals" as of the date that such obligation was assumed by the individual purchasers of the condominium units should be allocated to Buckley Development Co., Ltd., pursuant to section 482. If such "value" does not constitute income in the first instance, there is nothing to allocate. Burleigh House
With respect to the development of Burleigh House, the petitioners, who were designated as the Group A Participants, entered *279 into a joint venture with Burleigh House, Inc., a corporation, the stock of which was owned by Herbert Buchwald and Joseph Walan. Buchwald and Walan also held a 56.57 percent interest in the Group A Participation. Pursuant to the Joint Venture Agreement, the Group A Participants were to provide the funds necessary for Burleigh House, Inc., to close the purchase of certain property on which the Burleigh House condominium complex would be constructed. In partial consideration of the loan, the Group A Participants were granted an option to acquire the recreational and commercial facilities in the Burleigh House building. The option price was to be the cost of such facilities, including the prorated cost of the land, plus 10 percent. Once the recreational facilities were purchased, the agreement further provided that the Group A Participants would lease such facilities to the Burleigh House condominium owners association under a long-term net lease. On December 23, 1969, Herbert Buchwald, acting as trustee for the Group A Participants, purchased the recreational and commercial facilities in Burleigh House from Burleigh House, Inc., for the sum of $420,000. On the same day, also acting *280 as trustee for the Group A Participants, Buchwald entered into a 99-year lease of such facilities to the Burleigh House condominium association for an annual base rent of $181,440. At that time, all the condominiums in Burleigh House were owned by Burleigh House, Inc., the stock of which was totally owned by Herbert Buchwald and Joseph Walan. By amendment to his answer, the respondent has determined that the Group A Participants realized income in 1969 as a result of the "bargain purchase" of the recreational and commercial facilities of the Burleigh House complex from Burleigh House, Inc. Respondent contends that the right to purchase such facilities at cost plus 10 percent was granted to the Group A Participants, in part, as consideration for the loan of the funds. Since this issue was first raised by respondent by amendment to his answer, respondent has the burden of proof. Estate of Horvath v. Commissioner,59 T.C. 551 (1973). The parties have submitted this issue for decision reserving the right, if it should become necessary, to present evidence with respect to the fair market value of the property purchased by the Group A Participants pursuant to the option. For purposes *281 of decision, however, it must be assumed that the Group A Participants made a "bargain purchase," whether by option or otherwise. Petitioners rely primarily on the contention that no income was realized as the result of the exercise of the option. E.g., McNamara v. Commissioner,210 F.2d 505 (7th Cir. 1954). Petitioners make the point that no taxable gain is realized merely as the result of a bargain purchase. Palmer v. Commissioner,302 U.S. 63 (1937). With that there can be no disagreement. In this case, however, there is more to the transaction than a mere bargain purchase arrived at through arm's-length negotiation between unrelated parties. The Group A Participants were neither strangers to each other nor strangers to the financial advantages of leasing condominium recreational facilities. All the members of the group who are petitioners herein were also participants in the leasing of the Buckley Towers recreational facilities. Further, Herbert Buchwald and Joseph Walan, who together owned 56.57 percent of the Group A Participation, also owned all of the shares of Burleigh House, Inc., and through such ownership controlled the Burleigh House condominium association at the *282 time the long-term recreational lease was signed. It was understood from the outset that the recreational facilities in the Burleigh House project would be leased to the condominium association at a predetermined rental. It was further agreed that the Group A Participants would be permitted to purchase such facilities at cost plus 10 percent. These facilities comprised an integral part of the building and had no real value except as measured by the rentals to be paid by the condominium association. The rentals were wholly disproportionate to the purchase price of the facilities. The only consideration of record for granting to the Group A Participants the right to make the "bargain purchase" was the agreement on their part to provide the funds necessary to acquire the land for the Burleigh House development. The parties agree that a value representing "original issue discount" as defined in section 1232 must be taken into account and allocated to petitioners' cost or basis for the option in order to measure any gain realized upon the sale, exchange, or exercise of the option. In other words, pursuant to section 1232, and the regulations promulgated thereunder, some part of the *283 loan made by petitioners to the developers should be allocated to the cost of the option, thereby reducing the petitioners' basis for the loan itself. This amount would be taxable when the loan is paid. Except for a determination of the amount itself, the parties are in agreement at this point. Petitioners contend that allocation of a basis or cost to the option, pursuant to section 1232, precludes the realization of taxable income or gain upon the exercise of the option. For purposes of this opinion, it may be assumed that a portion of the amount loaned by petitioners to the developers will be allocated as "original issue discount" to the option. The option thereby becomes a "call option," purchased for value, entitling the petitioners to buy the recreational facilities at a predetermined price. It is clear that under section 1232, and the regulations promulgated for the purpose of determining "original issue discount" in this type of case, it was not contemplated that income would be realized again upon the exercise of the option. The purchaser of a "call option" does not realize taxable income in the exercise of the option regardless of the fact that the value of the property *284 thus acquired may greatly exceed its cost to the taxpayer. Realty Sales Co. v. Commissioner,10 B.T.A. 1217 (1928). See also Rev. Rul. 58-234, 1958-1 C.B. 279, 286.
With respect to the Buckley Towers issue, a decision will be entered for the petitioners. With respect to the Burleigh House issue, except for the "original issue discount," which is taxable on repayment of the loan in 1970, a decision will also be entered for the petitioners. Prior thereto, the Court will order such further proceedings, if any, as may be necessary in order to determine the "original issue discount" to be allocated to the basis of the option to acquire the recreational facilities. Appropriate orders will be entered. Footnotes
1. Cases of the following petitioners are consolidated herewith: James F. Gallagher and Helene Gallagher, docket No. 3859-73; Elliott Harris and Arlene F. Harris, docket No. 3860-73; Keith Charles Pasternak, a Minor by Alan S. Pasternak, Custodian and Guardian, docket No. 3861-73; Susan Jeanne Pasternak, a Minor by Alan S. Pasternak, Custodian and Guardian, docket No. 3862-73; Donald L. Pearce and Bernice B. Pearce, docket No. 3863-73; Theodore Sondov and Dina Sondov, docket No. 3864-73; Herbert Buchwald and Arlene Buchwald, docket No. 3865-73; Adalburt Buchwald and Helen Buchwald, docket No. 3866-73; Stuart L. Haas, docket No. 3867-73; Buchwald Enterprises, Inc., docket No. 3868-73; Joshua Sirkin and Carolyn Sirkin, docket No. 3869-73; Norman Jacobson and Mildred Jacobson, docket No. 3870-73; Herman Sondov and Rhea Sondov, docket No. 3871-73; Cantor Children's Trust, Beatrice Cantor and Herbert Buchwald, Trustees, docket No. 3872-73; Edward S. Millis and Minerva C. Millis, docket No. 3873-73; Joseph Nawalaniec and Irene Nawalaniec, docket No. 3874-73; Philip R. Stark and Elaine Stark, docket No. 3875-73; Sam Pasternak and Frieda Pasternak, docket No. 3876-73; Theodore Sondov and Dina Sondov, docket No. 3467-74; Herbert Buchwald and Arlene Buchwald, Adalburt Buchwald and Helen Buchwald; Leonard C. Cantor and Beatrice Cantor; William Friedman; James F. Gallagher and Helen Gallagher; Stuart L. Haas; Elliott Harris and Arlene F. Harris; Norman Jacobson and Mildred Jacobson; Edward S. Millis and Minerva Millis; Joseph Nawalaniec and Irene Nawalaniec; Alan S. Pasternak and Linda Pasternak; Donald L. Pearce and Bernice B. Pearce; Joshua Sirkin and Carolyn Sirkin; and Sam Pasternak and Frieda Pasternak, docket No. 5856-74.↩
*. In addition, respondent has determined certain additions of tax under Section 6653(a) of the Internal Revenue Code of 1954against petitioners, Norman Jacobson and Mildred Jacobson of $426.95 as a result of their alleged negligent failure to report any income in 1969 from Buckley Construction Company, Inc. Respondent and petitioners have agreed to defer this issue for a subsequent hearing, if necessary.
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
*. Keith and Susan Pasternak are the children of Alan and Linda Pasternak, and Leonard and Beatrice Cantor are the parents of the children who are beneficiaries of the Cantor Children's Trust.
3. In his brief, the respondent's position is summarized as follows: Section 61 of the Internal Revenue Code of 1954 (hereinafter referred to as Code) provides that a taxpayer is required to include in gross income gains derived from dealings in property. The amount of gain is the difference between the amount realized and the adjusted basis in the property sold. Code § 1001 (a); Treas. Reg. §§ 1.61-6(a), 1.1001(a). The amount realized is the sum of any money received plus the fair-market value of any property other than money received. Code↩ § 1001 (b). These cases involve the question of other property received on the sale of condominium units.
4. See Lakeside Garden Developers, Inc. v. Commissioner,T.C. Memo 1976-290↩.
5. There was no "lease" in the strict sense. When each condominium association undertook its obligation to pay its share of the rent under the so-called 99-year lease, and each individual purchaser assumed his pro rata share of that obligation, all he acquired was the privilege of sharing in the maintenance and use of the recreational facilities. This privilege is more analogous to a membership in a private club than ownership of a leasehold interest.