BENNETT, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s holding that the government may reallocate construction costs in accordance with the Welsh Homes formula (which the majority calls the “value method of allocation”).
I
The majority is laboring under the illusion that the main issue in this appeal is the apportionment of costs in accordance with “correct accounting practice” — a theory that no doubt will surprise the parties since no one argued it.[1] The parties and the Claims Court believed that the issue here was whether the Welsh Homes formula should be applied to the peculiar facts of this case under existing tax law.
Prior to the Claims Court’s and the majority’s decisions, it appeared that in the calculation of the cost of goods sold, a taxpayer should allocate to the interest sold the costs associated with that interest. The taxpayer in this case[2] simply allocated the costs of the improvements and the .9-acre parcel of land to the interest sold in fee simple (the condominium towers, the .9-acre tract of land on which the towers were located, and the amenities) and included the cost of the 4.6-acre tract of land in the basis of the retained interest (ground rent on the 4.6-acre tract of land).[3] This allocation has a basis both in common sense and tax law,[4] and serves as an affirmation of the principle that the term “cost of goods sold” means just that.
The government, however, was skeptical of such a simple allocation, and initially asserted that the rent charged for the ground lease was excessive, and attempted to invoke a theory whereby the “excess rent” payable under a long-term lease is capitalized and treated as proceeds from the sale of property. Doubtlessly in recognition of the fact that this “capitalization” theory had not been met with judicial favor,[5] the government, in its amended answer in the Claims Court, tested a new theory: the application of the Welsh Homes formula outside the unique area of Maryland ground rents.[6] In Welsh Homes, *876 where property interests in both the building and the underlying land are simultaneously retained and conveyed,[7] and thus the cost of the leasehold interest carved out of the whole “cannot be definitely shown,” 279 F.2d at 394 (emphasis added), the court approved the Commissioner’s use of an allocation method whereby the costs of the entire interest are lumped together and attributed to the interest sold and the interest retained according to their respective values in the year of sale. Id.
The factual disparity between the Maryland ground rent setting and the arrangement utilized by the taxpayer in this case is manifest, and, more important, the sine qua non of the Welsh Homes formula, that costs cannot be traced to the respective property interests, is conspicuously absent from this case.[8] The effect of the application of the Welsh Homes formula to this case is that the plain reality of attributing costs to the interests to which they relate is ignored, and used in its stead is a wholly arbitrary means of allocating costs according to values without any recognition of the substance of the arrangement that the taxpayer utilized. In Frank Lyon Co. v. United States, 435 U.S. 561, 583-84, 98 S.Ct. 1291, 1303, 55 L.Ed.2d 550 (1978), the Supreme Court stated:
[W]here ... there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached, the Government should honor the allocation of rights and duties effectuated by the parties.
The government has ignored the Supreme Court’s admonition in this case, as the application of the Welsh Homes formula effectively restructures the transaction entered into by the taxpayer by allocating a portion of the cost of the improvements, which were sold in fee simple, to the interest retained by the taxpayer.
II
The accounting texts “judicially noticed” by the majority offer no support for the application of the Welsh Homes formula in this case. In the first place, the proposition put forth in the texts, that costs should be matched with related revenues,[9] is so general as to have no great relevance to the specific facts of this case. At the very least, the proposition that the government’s proposed reallocation of costs is in accord with proper accounting practice would have to be established by expert testimony or by an accounting text that specifically addresses the type of arrangement utilized by the taxpayer.
Secondly, the texts cited do not support the use of the “value method” of financial accounting in this case. Seidler and Carmichael, ACCOUNTANTS’ HANDBOOK *877 (1981), 20-31, “Allocation of Costs,” actually suggests that the “accounting method” [10] used by the taxpayer, the direct tracing of costs, should be used.
Specific Identification Method. This method of cost allocation is based on determining actual costs applicable to each parcel of land. It rarely is used for land costs because such costs usually encompass more than one parcel. However, it frequently is used for direct construction costs because these costs are directly related to the property being sold. This method should be used wherever practicable.
Id. at 20-32 (emphasis added). Davidson and Weil, HANDBOOK OF MODERN ACCOUNTING (1977), 17-14, “Cost Allocation,” merely lists four methods of accounting for capitalized costs, including the specific identification method, without any statement suggesting which method is most appropriate to the facts of this case. Finally, Morrison and Cooper, FINANCIAL ACCOUNTING (1975), 283, describes a “basket” purchase as follows:
It occasionally happens that a firm acquires several assets all for one price with what is called a “basket” purchase. In this situation, the total cost of the several assets is known but the distribution of the cost to the individual assets may be uncertain. [Emphasis in original.]
The relevance of an allocation method based on “basket” purchases to the facts of this case escapes me.[11]
III
The majority elevates the Claims Court’s legal conclusion that the taxpayer’s allocation of costs “does not reflect reality ...” to a finding of fact subject to the “clearly erroneous” standard of review. This legal conclusion was based, in turn, on the court’s perception that the taxpayer was free to manipulate the condominium price and ground rent in any proportion, 2 Cl.Ct. at 577, a proposition rejected in Murry v. Commissioner, 601 F.2d 892, 898 (5th Cir.1979), and Friedman v. Commissioner, 36 T.C.M. (CCH) 841, 850-51 (1977), because an inequitable balance of purchase price to rental payments would result in the reduction of the attractiveness of the offering to the public.[12] The uncontradicted evidence at trial established that the sale/ground lease arrangement used by the taxpayer was prevalent in the Boca Raton area, and that the independent (i.e., nontax) business purpose of the arrangement was to lower the purchase price of the condominium units and thereby facilitate their sale.
IV
In short, I would reverse and leave the taxpayer’s allocation of costs intact, rather than substitute a means of taxation that is based more on the government’s imagination than the economic substance of the transaction. The application of the Welsh Homes formula to this case is clearly unwarranted under existing tax law. Such a sweeping change in the taxation of condominium sales should come, if at all, from Congress, and not from “creative” judicial opinions. See United States v. Byrum, *878 408 U.S. 125, 135, 92 S.Ct. 2382, 2389, 33 L.Ed.2d 238 (1972).

. It is perplexing to note that the majority places great emphasis on its notion that the application of the Welsh Homes formula in this case is in accord with "correct [financial] accounting practice.” In Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979), the Supreme Court cautioned against even the presumption of equivalency between tax and financial accounting, given their disparity of purpose. See discussion id. at 538-44, 99 S.Ct. at 784-87; see also Frank Lyon Co. v. United States, 435 U.S. 561, 577, 98 S.Ct. 1291, 1300, 55 L.Ed.2d 550 (1978); Commissioner v. Idaho Power Co., 418 U.S. 1, 15, 94 S.Ct. 2757, 2765, 41 L.Ed.2d 535 (1974); American Automobile Assn. v. United States, 367 U.S. 687, 693, 81 S.Ct. 1727, 1730, 6 L.Ed.2d 1109 (1961); United Grocers, Ltd. v. United States, 308 F.2d 634, 641 (9th Cir.1962) ("[w]hile testimony relative to accepted accounting practice may properly be considered by the court, it is not conclusive in determining the legal tax consequences of any transaction”).

. For the sake of simplicity, the actions of the partnership will be referred to as the "taxpayer."

. The government does not challenge the allocation of the cost of the 5.5-acre tract between the .9-acre lot sold and the 4.6-acre lot retained. See Treas.Reg. § 1.61-6(a) (1982).

. With all due respect to the observation in Skoglund v. United States, 230 Ct.Cl. 833, 834 (1982), that '"[u]nfortunate!y, common sense and tax law are rarely even waving acquaintances."

. See, e.g., Murry v. Commissioner, 601 F.2d 892, 893 (5th Cir.1979); Mangurian v. Commissioner, 38 T.C.M. (CCH) 366, 375 (1979); Friedman v. Commissioner, 36 T.C.M. 841, 851 (1977); Welsh Homes, Inc. v. Commissioner, 32 T.C. 239, 250-52 (1959), aff’d, 279 F.2d 391 (4th Cir.1960).

. In only one case has the Welsh Homes formula been applied outside this area, Connolly v. Commissioner, 34 T.C.M. 1379 (1975). In Connolly, the taxpayer constructed a cooperative apartment building on a parcel of land. The parties stipulated that the taxpayer "sold” leasehold interests in both the land and the building to cooperative apartment purchasers. Id. at 1381-82. Thus, the arrangement utilized in Connolly resembled that used in the Maryland ground rent setting where the building and its underlying land are both sold and leased. Moreover, *876 the court in Connolly cautioned that "our disposition of this case can hardly have any useful precedential value in other cases where the matters in controversy are more sharply brought into focus against the background of a more clearly developed record.” Id. at 1385.

. See Welsh Homes, 279 F.2d at 393-94, for a description of the intricacies of the Maryland ground rent arrangement.

. In Welsh Homes, the court stated:
The cost of the land and the cost of the building, the constituent elements of the property which the builder has acquired are known, but in the building operation they have been incorporated into a single property and when a part interest in the whole — the leasehold — is granted to the lessee and the reversionary interest or ground rent is retained by the lessor, it is impossible to ascertain what part of the value of these interests is attributable to the land and what part to the building. It follows that the cost of land and buildings must be allocated between the interest granted and the interest retained.
279 F.2d at 395. Welsh Homes thus involves a situation where the same property is both leased and sold. In this case the sale and lease each related to different, easily discernible properties, so there is no difficulty in tracing costs to the interest to which they relate.

. Assuming relevance, under this general rule the taxpayer’s allocation of costs was “correct,” as the costs of the properties sold were matched with sales income, and the cost of the parcel retained was included in the basis of the rental interest.

. The issue in this case is whether Welsh Homes should be applied, not the taxpayer’s choice of an "accounting method" for a onetime deduction of costs.

. In Welsh Homes, 279 F.2d at 395, the court was describing a “basket” purchase when it stated that "[a]Hocation of costs is normally employed for the establishment of a cost basis of property when a taxpayer acquires an aggregate of assets for a single unallocated purchase price and subsequently sells a portion of the whole.” (Citation omitted.) The court then noted that the case before it "presents the reverse of the situation," because the costs are known but it is impossible to trace these costs to the interest sold and the interest retained. Id. As previously mentioned, there is no difficulty in this case in assigning costs to the interest to which they relate, and thus Welsh Homes is inapplicable. See supra note 8.

. If, for example, the taxpayer offered the condominium units with a low purchase price (immediate gain to the taxpayer) and a correspondingly high rental payment (deferred income), one of the main tax advantages to the purchaser, deduction of interest payments, would be largely lost, as it is generally known that no deduction is permitted for nonbusiness rent.